UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LORA S.,[1]<br><br>        Plaintiff,<br><br>v.<br><br>CAROLYN COLVIN, Acting Commissioner of Social Security,<br><br>        Defendant. | Case No. 23-cv-06289-TSH<br><br>**ORDER RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 12, 18 |

## I.   INTRODUCTION

Plaintiff Lora S. moves for summary judgment to reverse the decision of Defendant Martin O'Malley, Commissioner of Social Security, denying her claim for disability benefits under the Social Security Act, 42 U.S.C. § 401 et seq. ECF No. 12. Defendant cross-moves to affirm. ECF No. 18. Pursuant to Civil Local Rule 16-5, the matter is submitted without oral argument. For the reasons stated below, the Court **GRANTS** Plaintiff's motion and **DENIES** Defendant's cross-motion.[2]

## II.   PROCEDURAL HISTORY

On June 28, 2013, Plaintiff filed an application for Social Security Disability Insurance and Supplemental Security Income benefits with a disability onset date of June 18, 2008. Administrative Record ("AR") 257-72. Following denial at the initial and reconsideration levels,

---

[1] Partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.
[2] The parties consent to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c). ECF Nos. 6, 7.

Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 171-91. An ALJ held a hearing on July 20, 2015 and issued an unfavorable decision on October 13, 2015. AR 25-112. The Appeals Council denied Plaintiff's request for review on 1-6. AR 1-6.

On June 23, 2017, Plaintiff sought review pursuant to 42 U.S.C. § 405(g). AR 1638-43. On January 10, 2019, the Court granted the parties' stipulation for remand and reversed the final decision of the Commissioner. AR 1651. On March 18, 2019, the Appeals Council vacated the ALJ decision and remanded. AR 1655–61.

On October 22, 2019, the ALJ conducted a second hearing. AR 1575–1609. The ALJ issued an unfavorable decision on January 3, 2020. AR 1555–74. Plaintiff timely filed written exceptions with the Appeals Council on February 2, 2020. AR 1555, 1806–12. On December 14, 2021, the Appeals Council found no reason under their rules to assume jurisdiction.[3] AR 1548–54.

For a second time, Plaintiff appealed to this Court. AR 2855–60. On July 14, 2022, the Court granted the parties' stipulation for remand and reversed the final decision of the Commissioner. AR 2861. On December 6, 2022, the Appeals Council vacated the ALJ decision and remanded. AR 2866–67.

On June 27, 2023, the ALJ conducted a third hearing. AR 2752-2814. The ALJ issued an unfavorable decision on August 24, 2023. AR 2725–51. This appeal followed.

### III.   ISSUES FOR REVIEW

Plaintiff raises two issues on appeal: (1) the ALJ failed to articulate clear and convincing reasons for rejecting her symptom and limitation testimony; and (2) the ALJ improperly rejected the lay witness evidence testimony of her mother.

---

[3] *See* 20 C.F.R. § 404.984(d) ("If no exceptions are filed and the Appeals Council does not assume jurisdiction of your case, the decision of the administrative law judge or administrative appeals judge becomes the final decision of the Commissioner after remand."); Richard C. Ruskell, Soc. Sec. Disab. Claims Handbook § 3:24, Court Remand Cases; Remand vs. Reversal (May 2022 Update) ("When a case is remanded by a federal court for further consideration and the Appeals Council remands the case to an administrative law judge, or an administrative appeals judge issues a decision pursuant to 20 C.F.R. §§ 404.983(c) and 416.1483(c), the decision of the administrative law judge or administrative appeals judge will become the final decision of the Commissioner after remand on the case unless the Appeals Council assumes jurisdiction of the case.").

IV.     **STANDARD OF REVIEW**

42 U.S.C. § 405(g) provides this Court's authority to review the Commissioner's decision to deny disability benefits, but "a federal court's review of Social Security determinations is quite limited." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015). The Commissioner's decision will be disturbed only if it is not supported by substantial evidence or if it is based on the application of improper legal standards. *Id.* Substantial means "more than a mere scintilla," but only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (cleaned up). Under this standard, which is "not high," the Court looks to the existing administrative record and asks "whether it contains 'sufficient evidence' to support the agency's factual determinations." *Id.* at 102 (cleaned up).

The Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (citation omitted). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Id.* at 1010 (citation omitted). If "the evidence can reasonably support either affirming or reversing a decision," the Court must defer to the ALJ's decision. *Id.* (citation omitted).

Even if the ALJ commits legal error, the ALJ's decision must be upheld if the error is harmless, meaning "it is inconsequential to the ultimate nondisability determination, or that, despite the legal error, the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity." *Brown-Hunter*, 806 F.3d at 492 (cleaned up). But "[a] reviewing court may not make independent findings based on the evidence before the ALJ to conclude that the ALJ's error was harmless" and is instead "constrained to review the reasons the ALJ asserts." *Id.* (cleaned up).

V.      **DISCUSSION**

**A.     Framework for Determining Whether a Claimant Is Disabled**

A claimant is "disabled" under the Social Security Act (1) "if he is unable to engage in any

3

1   substantial gainful activity by reason of any medically determinable physical or mental
2   impairment which can be expected to result in death or which has lasted or can be expected to last
3   for a continuous period of not less than twelve months" and (2) the impairment is "of such severity
4   that he is not only unable to do his previous work but cannot, considering his age, education, and
5   work experience, engage in any other kind of substantial gainful work which exists in the national
6   economy." 42 U.S.C. § 1382c(a)(3)(A)-(B); *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012).
7   To determine whether a claimant is disabled, an ALJ is required to employ a five-step sequential
8   analysis. 20 C.F.R. § 404.1520(a)(1) (disability insurance benefits); *id.* § 416.920(a)(4) (same
9   standard for supplemental security income). The claimant bears the burden of proof at steps one
10  through four. *Ford v. Saul*, 950 F.3d 1141, 1148 (9th Cir. 2020) (citation omitted).

11  At step one, the ALJ must determine if the claimant is presently engaged in a "substantial
12  gainful activity," 20 C.F.R. § 404.1520(a)(4)(i), defined as "work done for pay or profit that
13  involves significant mental or physical activities." *Ford*, 950 F.3d at 1148 (cleaned up). Here, the
14  ALJ determined Plaintiff had not performed substantial gainful activity since June 18, 2008, the
15  alleged onset date. AR 2730.

16  At step two, the ALJ decides whether the claimant's impairment or combination of
17  impairments is "severe," 20 C.F.R. § 404.1520(a)(4)(ii), "meaning that it significantly limits the
18  claimant's 'physical or mental ability to do basic work activities.'" *Ford*, 950 F.3d at 1148
19  (quoting 20 C.F.R. § 404.1522(a)). If no severe impairment is found, the claimant is not disabled.
20  20 C.F.R. § 404.1520(c). Here, the ALJ determined Plaintiff had the following severe
21  impairments: Major Depressive Disorder and Generalized Anxiety Disorder. AR 2731.

22  At step three, the ALJ evaluates whether the claimant has an impairment or combination of
23  impairments that meets or equals an impairment in the "Listing of Impairments" (referred to as the
24  "listings"). *See* 20 C.F.R. § 404.1520(a)(4)(iii); 20 C.F.R. Pt. 404 Subpt. P, App. 1. The listings
25  describe impairments that are considered "to be severe enough to prevent an individual from doing
26  any gainful activity." *Id.* § 404.1525(a). Each impairment is described in terms of "the objective
27  medical and other findings needed to satisfy the criteria of that listing." *Id.* § 404.1525(c)(3).
28  "For a claimant to show that his impairment matches a listing, it must meet all of the specified

4

1   medical criteria. An impairment that manifests only some of those criteria, no matter how
2   severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (footnote omitted). If a
3   claimant's impairment either meets the listed criteria for the diagnosis or is medically equivalent
4   to the criteria of the diagnosis, he is conclusively presumed to be disabled, without considering
5   age, education and work experience. 20 C.F.R. § 404.1520(d). Here, the ALJ determined Plaintiff
6   did not have an impairment or combination of impairments that meets the listings. AR 2731.

7       If the claimant does not meet or equal a listing, the ALJ proceeds to step four and assesses
8   the claimant's residual functional capacity ("RFC"), defined as the most the claimant can still do
9   despite their imitations (20 C.F.R. § 404.1545(a)(1)), and determines whether they are able to
10  perform past relevant work, defined as "work that [the claimant has] done within the past 15 years,
11  that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do
12  it." 20 C.F.R. § 404.1560(b)(1). If the ALJ determines, based on the RFC, that the claimant can
13  perform past relevant work, the claimant is not disabled. *Id.* § 404.1520(f). Here, the ALJ
14  determined Plaintiff has the RFC to

> perform a full range of work at all exertional levels but with the following nonexertional limitations: She could tolerate occasional public interaction. She could not perform tandem work tasks with coworkers. She could manage occasion [sic] interaction with supervisors, as needed. She could manage self-paced, end-of-the-day work quotas but not a production line pace. She could tolerate occasional changes in the physical work environment.

19  AR 2732-33. Based on this RFC, the ALJ determined Plaintiff could not perform past relevant
20  work. AR 2739.

21      At step five, the burden shifts to the agency to prove that "'the claimant can perform a
22  significant number of other jobs in the national economy.'" *Ford*, 950 F.3d at 1149 (quoting
23  *Thomas v. Barnhart*, 278 F.3d 947, 955 (9th Cir. 2002)). To meet this burden, the ALJ may rely
24  on the Medical-Vocational Guidelines (commonly known as "the grids"), 20 C.F.R. Pt. 404 Subpt.
25  P, App. 2,[4] or on the testimony of a vocational expert. *Ford*, 950 F.3d at 1149 (citation omitted).

---

[4] The grids "present, in table form, a short-hand method for determining the availability and numbers of suitable jobs for a claimant." *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114-15 (9th Cir. 2006) (citing *Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999)). They consist of three tables, for sedentary work, light work, and medium work, and a claimant's place on the applicable

"[A] vocational expert or specialist may offer expert opinion testimony in response to a hypothetical question about whether a person with the physical and mental limitations imposed by the claimant's medical impairment(s) can meet the demands of the claimant's previous work, either as the claimant actually performed it or as generally performed in the national economy." 20 C.F.R. § 404.1560(b)(2). An ALJ may also use other resources such as the Dictionary of Occupational Titles ("DOT").[5] *Id.* Here, the ALJ determined there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. AR 2740. As such, the ALJ determined Plaintiff has not been disabled since June 18, 2008. AR 2741.

## B.     Plaintiff's Subjective Testimony

Plaintiff first argues the ALJ failed to articulate clear and convincing reasons for rejecting her symptom and limitation testimony. As noted above, the ALJ found Plaintiff suffers from depression and generalized anxiety disorder. AR 2731.

### 1.     Plaintiff's Testimony

In support of her application, Plaintiff testified that in 2008 she volunteered once or twice a week assisting with autopsies at the Sheriff's Saves Program. AR 88. She was asked to take a break from volunteering due to her behavior, as the Captain and Sargent noticed she started to become secluded, non-talkative, not happy like she usually was, and just not herself. *Id.* They told her to focus on getting healthy and that she could return when ready. AR 88–89. Plaintiff never returned. AR 89.

In September 2008 Plaintiff's mother moved in with her to help care for her children because she was concerned about the well-being of her grandchildren and daughter. AR 94. Her mother was concerned because Plaintiff appeared depressed, lost a lot of weight, and was not

---

table depends on a matrix of four factors: a claimant's age, education, previous work experience, and physical ability. *Id.* "For each combination of these factors, [the grids] direct a finding of either 'disabled' or 'not disabled' based on the number of jobs in the national economy in that category of physical-exertional requirements." *Id.*

[5] The DOT classifies jobs by their exertional and skill requirements. 20 C.F.R. § 404.1566(d)(1); *Wischmann v. Kijakazi*, 68 F.4th 498, 502 (9th Cir. 2023) ("Although criticized as having many outdated job descriptions, the DOT is typically the starting point for VEs to identify the occupations relevant for each claimant's residual functional capacities.") (cleaned up); *Pinto v. Massanari*, 249 F.3d 840, 846 (9th Cir. 2001) (The "best source for how a job is generally performed is usually the Dictionary of Occupational Titles.").

behaving as she used to. *Id.* In January 2009 Plaintiff and her children moved from the apartment she shared with her former husband into her mother's home. AR 94–95. Her mother was "really, really involved at that time [in taking care of her grandchildren] because I was really depressed." AR 96. After the move, Plaintiff had transportation and motivation difficulties in obtaining treatment between 2009 and 2013. AR 96–97. During that time, she fell "into the will of not wanting to do anything." AR 96. Plaintiff did not seek out another psychologist because she did not feel comfortable since change is difficult for her. *Id.* She also stopped receiving mental health care from a professional around 2018 because she lost her Kaiser Permanente coverage after her divorce, when she could no longer afford insurance. AR 2789. In 2013, Plaintiff's mother decided to relocate everyone closer to Plaintiff's friends, hoping to help with her depression, but Plaintiff ended up feeling "more depressed for some unknown reason I just felt, like, something was missing in my life." AR 99. At that time, Plaintiff felt sad and did not feel she had the ability to work. *Id.*

When depressed, Plaintiff does not want to get out of bed, cook, or eat. AR 102–03, 359–61. Other than to use the bathroom and eat, Plaintiff does not get out of bed two to three times a week. AR 2795. She also said her mother and oldest daughter remind her to change clothes or wash/style her hair. AR 361. Some days, she is too depressed or tired to bathe. AR 360. Plaintiff suffers from decreased energy and no motivation. AR 103–04, 1589. Sometimes she would go months without hearing from friends or would not return their calls. AR 104. She testified that she had crying spells four days a week and felt like a "loser" and a "loner" who isolated. AR 104–05.

Plaintiff sometimes has difficulty interacting with her family and others. AR 105–06, 364. She feels people are attacking her. AR 2792. If she leaves the house to run errands with her mom, Plaintiff waits in the car while her mom goes into public. AR 2796. Plaintiff gets irritated and sometimes has a short fuse, yelling at her daughters or getting mad at her mother. AR 105–06. She yells a lot, gets angry, and screams into a pillow. AR 1585.

Plaintiff quit her last job because of trouble getting along with her supervisor. AR 106. Plaintiff's disagreements with her boss would escalate into yelling. AR 1586. Another job ended

1  because Plaintiff got into a "big old fight with the owner's wife." AR 2784. Plaintiff testified she
2  cannot work because she feels depressed, lonely, and sometimes has no physical energy to get up
3  and go and do a job. AR 2792.

### 2. ALJ's Decision

The ALJ found Plaintiff's impairments "could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record . . . ." AR 2735.

Plaintiff argues the ALJ incorrectly rejected her testimony based on a record of conservative mental health treatment, improperly relied on medical opinions to discredit her, and failed to show how her daily activities contradicted her testimony or how they transferred to a work setting. Pl.'s Mot. at 5-17.

### 3. Legal Standard

"In evaluating the credibility of a claimant's testimony regarding subjective pain, an ALJ must engage in a two-step analysis. 'First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged.'" *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007)). And second, "if the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if she gives 'specific, clear and convincing reasons' for the rejection." *Vasquez*, 572 F.3d at 591 (quoting *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996)). "At the same time, the ALJ is not required to believe every allegation of [symptoms], or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (citation and internal quotations omitted). Along the same lines, "an individual's statements of symptoms alone are not enough to establish the existence of a physical or mental impairment or disability." SSR 16-3P, 2016 WL 1119029, at *2.

In determining whether an individual's symptoms will reduce her capacities to perform

work-related activities or abilities to function, "the ALJ may consider inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct; unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and whether the claimant engages in daily activities inconsistent with the alleged symptoms." *Molina*, 674 F.3d at 1112 (citations and internal quotation marks omitted). "[I]f an individual's statements about the intensity, persistence, and limiting effects of symptoms are inconsistent with the objective medical evidence and the other evidence, [the ALJ] will determine that the individual's symptoms are less likely to reduce his or her capacities to perform work-related activities or abilities to function independently, appropriately, and effectively in an age-appropriate manner." SSR 16-3p, 2016 WL 1119029, at *7.

### 4. Analysis

As a preliminary matter, Plaintiff spends a good portion of her brief summarizing the medical evidence the ALJ relied upon, pointing out parts of that evidence that support her position. Pl.'s Mot. at 10-17. Defendant does not dispute this evidence. Def.'s Mot. at 5. Further, in finding Plaintiff was capable of work that included social and production pace limitations, the ALJ specifically acknowledged such evidence. AR 2732-33. Regardless, as noted above, the Court "must consider the entire record as a whole," and the ALJ is responsible for resolving conflicts in medical testimony. *Garrison*, 759 F.3d at 1009-10. If "the evidence can reasonably support either affirming or reversing a decision," the Court must defer to the ALJ's decision. *Id.* at 1010.

Plaintiff argues the ALJ erred in rejecting her testimony based on conservative treatment. However, "evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment." *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007) (citing *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995)). Further, the effectiveness of treatment is relevant in determining the severity of a claimant's symptoms. 20 C.F.R. §§ 404.1529(c)(3)(iv)-(v), 416.929(c)(3)(iv)-(v). A claimant's "overall improvement" after initial stabilizing treatment is a sufficient reason to discount her subjective complaints. *Smartt v. Kijakazi*, 53 F.4th 489, 500 (9th Cir. 2022). Here, the ALJ noted Plaintiff received counseling for

9

her mental limitations, her conditions were managed by routine changes to her medication regimen, and she reported that medications helped her symptoms. AR 2736 (citing AR 494, 1440, 1445). When Plaintiff had exacerbations in her symptoms, her medications were adjusted. AR 1461, 2646, 2658, 2672. *See Warre v. Comm'r of Soc. Sec.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits"). The ALJ also noted Plaintiff's overall mood improved through conservative means, such as going to the gym and being more social. AR 2763 (citing AR 2703). By 2018, after an extended period of counseling, Plaintiff reported her mood improved and she overall appeared to be doing better. AR 2737 (citing AR 2703). She was working with "Voc Rehab," had recently started a personal training program, and was excited about spending time with her new grandson. AR 2703. She reported that she stopped taking her psych meds for three months and restarted after she noticed her mood was worse. *Id.* Such "evidence of medical treatment successfully relieving symptoms can undermine a claim of disability" based on a mental impairment. *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017); *Mead v. Astrue*, 330 F. App'x 646, 648 (9th Cir. 2009) (ALJ properly discounted claimant's self-reports where treatment notes indicated that her depression had improved, she responded well to treatment, and she could perform activities of daily living) (citing *Thomas*, 278 F.3d at 958-59); *Crane v. Shalala*, 76 F.3d 251, 254 (9th Cir. 1996) (ALJ properly considered the claimant's daily activities, treating therapist notes, and evidence suggesting he responded well to treatment in rejecting claimant's testimony).

Plaintiff also argues the ALJ improperly rejected her subjective testimony because the severity of her symptoms were not "entirely consistent" with the medical evidence. Pl.'s Mot. at 16. However, in evaluating Plaintiff's testimony, the ALJ's consideration of this objective medical evidence is appropriate. *See* 20 C.F.R. § 404.1529(c)(2) (when evaluating symptoms, ALJ considers consistency with objective medical evidence); *Molina*, 674 F.3d at 1113 (in discounting claimant's allegations of an inability to interact with others, ALJ appropriately considered her presentation and demeanor on mental status examinations, where she was "alert and oriented, maintained good eye contact, did not appear excessively anxious, spoke coherently

10

1   and fluently, smiled appropriately, and was congenial"); *Robert B. v. Kijakazi*, 2022 WL 425358,
2   at *9 (N.D. Cal. Feb. 11, 2022) (In evaluating the credibility of a claimant's testimony regarding
3   subjective pain, an ALJ may consider whether it conflicts with objective medical evidence).
4   While Plaintiff alleged problems with concentration and memory (AR 1478, 1591-92), the ALJ
5   cited mostly normal mental status exam reports indicating generally intact functioning, including
6   fair memory and average to low average concentration. AR 1075, 2527, 2720, 2736. And even
7   though Plaintiff alleged symptoms of depression and anxiety (AR 494), her test scores were
8   consistently in the mild to moderate ranges. *See, e.g.,* AR 488, 1447, 1460, 1514, 1541, 2545,
9   2673.

10  Finally, Plaintiff argues the ALJ failed to show how her daily activities contradicted her
11  testimony. Pl.'s Mot. at 14-16. An ALJ may rely on performance of activities of daily living if
12  the activities performed contradict the claimant's testimony or if the activities are performed for a
13  substantial part of the day and are transferable to a work setting. *Orn v. Astrue*, 495 F.3d 625, 639
14  (9th Cir. 2007); *see* 20 C.F.R. § 404.1529(c)(3) (in addition to considering objective medical
15  evidence, ALJ considers whether and to what extent the claimant's subjective statements are
16  consistent with other evidence in the record). Here, the ALJ did not explicitly list this as a reason
17  for rejecting Plaintiff's testimony, but even if she did and the Court were to find any error, the
18  ALJ provided other specific, independent, and well supported bases for discounting Plaintiff's
19  allegations. As such, the ALJ's findings would still be upheld. *See Carmickle v. Comm'r*, 533
20  F.3d 1155, 1162-63 (9th Cir. 2008) (upholding the ALJ's overall credibility finding even though
21  two of the credibility factors the ALJ considered were found invalid). Where, as here, the ALJ's
22  findings are rational and supported by substantial evidence in the record, the decision should not
23  be second-guessed. *See Thomas*, 278 F.3d at 959.

24  **C.     Lay Witness Testimony**
25  Plaintiff's mother, Rita S., completed a third-party function report in August 2013 and
26  submitted a two-page letter in July 2015 regarding her daughter's functional ability and
27  limitations. AR 351–58, 424–26. She first noticed problems with her daughter's mental stability
28  in 2008 when her granddaughter called her around September stating that her mother was sleeping

11

too much. AR 425. After receiving a subsequent call from her oldest granddaughter saying that her mother had expressed suicidal thoughts, she moved in with her daughter and grandchildren because she was worried about her daughter's well-being. AR 425–26. In January 2009, Plaintiff and her children moved out of their home and into Rita's home. AR 425. They lived there until January 2011, when they moved out. AR 426. However, Rita maintained a bedroom at Plaintiff's new place and continued to essentially live with her daughter because she was concerned about her "well being and ability to take care of herself and her daughters, specifically the youngest daughter." *Id.*

Rita described Plaintiff as having difficulty concentrating, very forgetful, depressed, paranoid, anxious, and stated her daughter yells out loud at family for little things. AR 351, 355, 357, 426. She noted Plaintiff has problems getting out of bed and sometimes sleeps for two days. AR 351–52. Rita reported Plaintiff often described feeling empty and bored. AR 425. She indicated that she assists Plaintiff with meal preparation and that her daughter can clean and do laundry with reminders and help. AR 354. She stated that Plaintiff will wear the same clothes for days and needs reminders for showering, changing clothes, and brushing hair and teeth. AR 352–54, 425. Rita reported that Plaintiff also needs reminders to take medication. AR 354. She noted that Plaintiff has problems following instructions and problems following through with appointments. AR 355, 425.

Rita described Plaintiff as not handling stress well and becoming overwhelmed with worry about her daughters. AR 357, 425. She noted Plaintiff has "practically made a prisoner out of my 14-year old granddaughter because she has become so overprotective of her [and that she is] the same way with her dog." AR 425. Rita attributed Plaintiff's overprotectiveness to anxiety, describing her daughter's anxiety as paranoia like at times. *Id.* Rita noted that everything seemed to go to extremes with Plaintiff in the past few years and that she had difficulty with moderation. *Id.*

Rita has observed Plaintiff yelling out loud, having outbursts, and using foul language at inappropriate times. AR 351, 355, 357, 425. She reported that Plaintiff picks at her hair and scalp uncontrollably and has problems with acting inappropriate in public at times. AR 425. Rita noted

12

that Plaintiff started stealing reading glasses from drugstores for no apparent reason. *Id.* She detailed that based on her almost daily observations, she knows Plaintiff has struggled with the following issues: she was very depressed; anxious; did not take care of herself; problems with sleep; frequent anger outbursts; problems with concentration and focus; and difficulty following through on everyday tasks. AR 426.

In her decision, the ALJ summarized Rita's testimony, noting she reported that Plaintiff expressed suicidal thoughts, exhibited abnormal behavior, had trouble sleeping, had anxiety regarding her daughters, could not concentrate, was very forgetful, can become very paranoid, and yells out loud at intervals. AR 2733. The ALJ stated she considered Rita's statements as those of a non-medical source and gave her statements "no weight" because: (1) they were inconsistent with the objective medical evidence and medical opinions of record; and (2) she "does not have medical training necessary to make exacting observations as to dates, frequencies, types, and degrees of medical signs and symptoms or the frequency or intensity of unusual moods or mannerisms." *Id.*

### 1. Legal Standard

"In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006) (citation omitted). Such testimony is valuable precisely because it provides additional information that is not necessarily reflected in the medical records, including how an individual is able to function in the community and with what level of support. *See Schneider v. Comm'r of Soc. Sec. Admin.*, 223 F.3d 968, 975-76 (9th Cir. 2000). Thus, "[i]n evaluating the intensity and persistence" of symptoms, the ALJ "consider[s] all of the available evidence," including that from "medical sources and nonmedical sources about how [a claimant's] symptoms affect [them]." 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1). An ALJ may discount lay testimony only by providing "reasons that are germane to each witness." *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (quoting *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993)).

### 2. Analysis

Plaintiff argues the ALJ's first reason for rejecting Rita's opinion, a lack of consistency

13

with the objective medical evidence and medical opinions of record, is not a reason germane to find her opinion unpersuasive. Pl.'s Mot. at 20. The Court agrees. "The fact that lay testimony and third-party function reports may offer a different perspective than medical records alone is precisely why such evidence is valuable at a hearing." *Diedrich v. Berryhill*, 874 F.3d 634, 640 (9th Cir. 2017) (citing *Smolen*, 80 F.3d at 1289). Thus, "a lack of support from the 'overall medical evidence' is . . . not a proper basis for disregarding [a lay witness's] observations." *Id.*; *see also Bruce v. Astrue*, 557 F.3d 1113, 1116 (9th Cir. 2009) ("Nor under our law could the ALJ discredit [the witness's] lay testimony as not supported by medical evidence in the record."); *Smolen*, 80 F.3d at 1289 (holding that ALJ erred where the ALJ rejected the testimony of claimant's family members about claimant's symptoms because the medical records did not corroborate those symptoms).

As to the ALJ's second reason for rejecting Rita's observations, for not having the medical training necessary to make observations of medical signs and symptoms or intensity of unusual moods or mannerisms, this reason appears contrary to the Commissioner's own "regulation that he will consider observations by non-medical sources as to how an impairment affects a claimant's ability to work" *Dodrill*, 12 F.3d at 919 (citing 20 C.F.R. § 404.1513(e)(3).[6] The Court notes that Rita provided statements on Social Security Form SSA 3373-BK: Function Report – Adult – Third Party. AR 351–58. On page 1 of 10 of Form SSA-3380-BK, Social Security instructs the individual(s) completing the Function Report – Adult – Third Party that they "[d]o not ask a doctor or hospital to complete this form . . . [and that] [t]he information that you give on this form will be used to make a decision on the disabled person's claim." Form SSA-3380-BK.[7] The ALJ's reliance on a lack of medical training to give no weight to Rita contradicts these

---

[6] *See also* 20 C.F.R. § 404.1513(a)(4), 20 C.F.R. § 416.913(a)(4) ("Evidence from nonmedical sources. Evidence from nonmedical sources is any information or statement(s) from a nonmedical source (including you) about any issue in your claim. We may receive evidence from nonmedical sources either directly from the nonmedical source or indirectly, such as from forms we receive and our administrative records."); Social Security Ruling 96-8p (the residual functional capacity assessment must be based on all the evidence in the record, including lay evidence); Social Security Ruling 16-3p (We will "carefully consider other evidence in the record" that non-medical sources provide "such as family and friends.").
[7] Available at https://www.ssa.gov/forms/ssa-3380.pdf.

14

instructions provided by Form SSA-3380-BK.  In short, while the form states the applicant should not ask a doctor to complete the form, it appears the ALJ determined the testimony could not be used because a doctor or someone with medical training did not complete it.

Further, although the ALJ determined Rita did not have the medical training necessary to make observations of medical signs/symptoms or intensity of her daughter's unusual moods or mannerisms, she did not make a medical diagnosis beyond the competence of a lay witness.  Rita described the symptoms she observed, and such "lay witness testimony as to a claimant's symptoms or how an impairment affects ability to work is competent evidence."  *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir.1996); *Dodrill*, 12 F.3d at 918-19 ("[F]riends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to her condition.").  Importantly, as a mother providing insights about her daughter's behavior, Rita's testimony could be of particular value because she lives with her daughter and based her statements on her "almost daily observations of Lora that she was struggling with the issues that I have discussed above."  AR 426.  *See Smolen*, 80 F.3d at 1289 ("[T]estimony from lay witnesses who see the claimant every day is of particular value.").  While the ALJ can dismiss evidence from lay witnesses if she believed they were merely repeating a claimant's complaints, the evidence from witnesses who clearly see the claimant on a frequent basis, and who sufficiently explain when and to what extent they had the opportunity to observe the claimant, cannot "be so easily disposed of."  *Dodrill*, 12 F.3d at 918.

In sum, the Court finds the ALJ erred by failing to articulate germane reasons specific to Rita S. for rejecting her testimony.

**D.    Remedy**

The remaining question is whether to remand for further administrative proceedings or for the immediate payment of benefits.  The Social Security Act permits courts to affirm, modify, or reverse the Commissioner's decision "with or without remanding the case for a rehearing."  42 U.S.C. § 405(g); *see also Garrison*, 759 F.3d at 1019.  "[W]here the record has been developed fully and further administrative proceedings would serve no useful purpose, the district court should remand for an immediate award of benefits."  *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th

Cir. 2004). However, "[r]emand for further proceedings is appropriate where there are outstanding issues that must be resolved before a disability determination can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated." *Luther v. Berryhill*, 891 F.3d 872, 877–78 (9th Cir. 2018) (citations omitted). It is only "rare circumstances that result in a direct award of benefits" and "only when the record clearly contradicted an ALJ's conclusory findings and no substantial evidence within the record supported the reasons provided by the ALJ for denial of benefits." *Leon v. Berryhill*, 880 F.3d 1041, 1047 (9th Cir. 2017).

Here, the ALJ failed to fully and fairly develop the record when evaluating Plaintiff's disability claim, but it is not clear that the ALJ would be required to find Plaintiff disabled. Accordingly, remand for further proceedings is appropriate.

## VI.   CONCLUSION

For the reasons stated above, the Court **GRANTS** Plaintiff's motion and **DENIES** Defendant's cross-motion. This matter is **REMANDED** for further administrative proceedings consistent with this order. The Court shall enter a separate judgment, after which the Clerk of Court shall terminate the case.

**IT IS SO ORDERED.**

Dated: December 20, 2024

THOMAS S. HIXSON
United States Magistrate Judge